*453 OPINION.
Littleton :
The position of the petitioner is that the commissions to which it was entitled under its contracts with the companies the stock of which was being sold, were not earned until all installment payments had been completed by the purchaser, and that the method adopted by it of eliminating from gross income all commissions on stock sold, as to which the purchaser was 60 days or more in arrears with one or more of his installment payments, was correct. It is argued that under the terms of the underwriting contracts petitioner was not entitled to claim as its own any commission until full and complete payment for the stock which it had sold had been made. It appears that under the underwriting contracts petitioner’s commission was payable out of the first payments made by the subscriber. It is insisted, however, that notwithstanding the fact that •when the payments made at the time of the subscription contract, or prior to the end of the year, equaled or exceeded the amount of the petitioner’s commission, and that it had the right to charge the issuing company with the commission, the petitioner was still “ under duty to see to it that the subscriber completed his payments and that the stock was actually sold, because petitioner had received compensation for making that particular sale and until the stock was paid for there was no completed sale — no stock was issued or delivered. Moreover, petitioner had by written contract agreed to underwrite the entire issue — to place the entire issue at a stipulated amount — and where a subscriber became delinquent, or he did not comply with his contract, there was only one thing for petitioner to do, and that was to resell the stock.”
By reason of this situation it is claimed that the method adopted by the petitioner of determining its income by eliminating therefrom commissions on shares sold, but as to which the purchaser was 60 days or more in arrears with his payments, should be approved.
The method adopted by the petitioner in respect of unearned commissions is not essentially different from the setting up of a reserve for future contingencies, which is unauthorized in cases of this kind by the Revenue Act of 1918. Appeal of William J. Ostheimer, 1 B. T. A. 18; Appeal of Consolidated Asphalt Co., 1 B. T. A. 79; Appeal of Uvalde Co., 1 B. T. A. 932; Thomas Cronin Co. v. Lewellyn, 9 Fed. (2d) 974; Appeal of Pan-American Hide Co., 1 B. T. A. 1249; Appeal of Morrison-Ricker Mfg. Co., 2 B. T. A. 1008; Appeal of Thatcher Medicine Co., 3 B. T. A. 154; Appeal of Greenville Coal Co., 3 B. T. A. 1323.
It is not claimed by the petitioner that an amount equal to or in excess of its commissions had not been paid by the subscriber. Neither the company the stock of which had been sold nor the *454 subscriber had indicated any intention of canceling the subscription contract, and the evidence does not warrant the conclusion that either was likely to do so. The petitioner excluded from income commissions on shares in respect of which the subscription contract had been canceled and which shares had not been resold, and the Commissioner does not question this.
The Board is of the opinion that the commissions, totaling $311,573.75, constituted income within the meaning of the statute, and the action of the Commissioner in increasing the income in that amount is approved.
The next question relates to the disallowance by the Commissioner of $229,691.03, claimed as a deduction as part of the compensation paid to Greene and A. D. Howard in the form of commissions on stock sold during the year. Two hundred and twenty-three thousand three hundred and twenty-four dollars of the amount represented commissions paid to Greene in addition to his fixed compensation of $26,000, and $6,367.03 represented commissions paid to Howard in addition to his fixed compensation. The amount of commissions due Greene on the total net shares sold during 1919 was $235,138.75, which brings into issue the propriety of a deduction of $241,505.78 as a part of the compensation of these two officers.
The compensation of the officers was duly and regularly fixed by resolutions of the directors and was duly paid or credited to them. Two hundred thousand dollars or more of Greene’s compensation was paid to him and he reported the same in his tax return. Howard’s total compensation was paid to him. The compensation of officers was authorized without consideration of their stock ownership. It -was predicated entirely upon the value placed by the directors upon the services rendered and to be rendered during the year. Howard was vice president and a director and owned only one qualifying share of stock. He devoted his entire time and energy to the conduct of the petitioner’s business and, as an aid to Greene, he was instrumental in the success of the company. F. Liston Collins, who owned only three shares of stock, was a sales director and was paid commissions amounting to $113,183.50. This amount was deducted by the petitioner and allowed by the Commissioner without question. Compensation in the form of commissions paid to salesmen, sales directors, branch managers, and district superintendents, only one or two of whom owned a small amount of petitioner’s stock, appears to equal, in comparison with the value of the services rendered to the petitioner, the compensation paid to Greene. No question is raised as to the deduction claimed for compensation paid to any one other than Greene and Howard.
Greene organized the three finance corporations and procured the contracts for the sale of their stock to which petitioner’s income was *455 entirely attributable. He formulated and was largely responsible for the success and plans adopted by the petitioner. He devoted all of his energies to the business for the greater portion of time long after the usual working hours. The policies of the company represented merely the embodiment of his ideas. The responsibility of solving its problems as they arose devolved upon him.
The reason given by the Commissioner for the disallowance of the deduction of commissions paid to Greene and Howard in the notice of the deficiency mailed to the petitioner was as follows:
Commissions paid to officers are tentatively disallowed'in tlie absence of copy of agreement, or oilier evidence showing authorization, how computed, etc. However, due consideration will be given to any information you may desire to submit tending to prove the correctness of the deduction, provided same is submitted within the time limit prescribed by Section 274 of the Revenue Act of 1924.
At the hearing, and after the petitioner had proved the authorization of the salaries and the character of services rendered, the Commissioner insisted that the compensation paid to Greene and Howard was unreasonable and represented a distribution of profits. In support of this claim the Commissioner pointed to the fact that Greene’s income from other activities in years prior to 1918 was small in comparison with the amount paid him by the petitioner in 1919. We do not consider this as proof that Greene’s services to the petitioner during the taxable year were not worth what it paid him. Although the compensation paid was large, we find no sufficient evidence to justify the conclusion that the amount paid, or any portion thereof, represented a distribution of profits in the guise of compensation. In view of the evidence the Board can not, in justice, say that the value which the corporation placed upon Greene’s services was unreasonable. No reason was advanced as to why the compensation paid Howard was considered unreasonable. We think it was not.
The Board is of the opinion that the compensation of $235,138.15 paid to Greene and $6,361.03 paid to Howard should be allowed as deductions from gross income.
We are of the opinion from the evidence that H. Y. Greene owned and controlled substantially all of the stock of the petitioner and the other corporations mentioned. The minority stock in the petitioner corporation was held by persons who had received it under a contract providing that Greene might repurchase it at any time; they took no interest in the affairs of the corporation; he always voted the minority stock. The minority stock was at all times under the control of H. Y. Greene. Had there been the slightest indication of opposition by the minority stockholders, it would only have been necessary for Greene to repay the loan, which he was at all times able to do, and take over the stock. In these circumstances, we are of *456 the opinion that he controlled the outstanding minority stock of the petitioner. Greene owned more than 99 per cent of the outstanding stock of the other corporations and they were therefore affiliated with the petitioner.
The statutory invested capital of the petitioner for 1919 was $61,170.16. It is claimed that its profits tax should be computed under the provisions of section 328 of the Revenue Act of 1918. However, in view of our decision that the net income and invested capital of the petitioner and the other corporations mentioned should be computed upon the basis of a consolidated return, it is unnecessary to pass upon this question.
Judgment will be entered on 15 days’ notice, under Rule 50.
Milliken and Steknhagen concur in the result only.